Vassi Iliadis (Bar No. 296382)
**HOGAN LOVELLS US LLP**
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
Telephone: (310) 785-4600
Facsimile: (310) 785-4601
vassi.iliadis@hoganlovells.com

Lauren B. Cury (*pro hac vice*)
Anna Kurian Shaw (*pro hac vice*)
**HOGAN LOVELLS US LLP**
555 13th Street NW
Washington, DC 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5710
lauren.cury@hoganlovells.com
anna.shaw@hoganlovells.com

*Attorneys for Defendant NVIDIA Corporation*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| TED ENTERTAINMENT, Inc., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>NVIDIA CORPORATION,<br><br>Defendant. | Case No.: 5:25-CV-10287-EJD-SVK<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER FED. R. CIV. P. 12(b)(6)**<br><br>Judge: Hon. Edward J. Davila<br>Courtroom: 4, 5th Floor<br>Hearing Date: May 28, 2026<br>Hearing Time: 9:00 am<br><br>Complaint Filed: November 26, 2025 |

**NOTICE OF MOTION & MOTION**

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE**, that on May 28, 2026 at 9:00 am, in Courtroom 4, 280 South 1st Street, before the Honorable Edward J. Davila, Defendant NVIDIA Corporation ("NVIDIA") will and does hereby move this Court to dismiss the sole count of the Complaint, disposing of this case in its entirety.

This Motion is based on this Notice of Motion and Motion; the following Memorandum of Points and Authorities in support thereof; all matters of which the Court may take judicial notice; and such documentary and oral evidence as may be presented at or before the hearing on this Motion.

Dated: February 23, 2026                    Respectfully submitted,

By: */s/ Lauren Cury*

**HOGAN LOVELLS US LLP**
Vassi Iliadis (Bar No. 163450)
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 785-4600
Facsimile: (310) 785-4601
vassi.iliadis@hoganlovells.com

Lauren B. Cury (*pro hac vice*)
Anna Kurian Shaw (*pro hac vice*)
555 13th Street NW
Washington, DC 20004
Telephone: (202) 637-5600
lauren.cury@hoganlovells.com
anna.shaw@hoganlovells.com

*Attorneys for Defendant*
*NVIDIA CORPORATION*

i

# TABLE OF CONTENTS

**Page**

STATEMENT OF ISSUES TO BE DECIDED ...................................................................... 1

INTRODUCTION ................................................................................................................ 1

BACKGROUND .................................................................................................................. 2

I.    Plaintiffs' Complaint .................................................................................................. 2

II.   Access Controls Versus Copy Controls .................................................................... 3

      a.    Access and copy controls perform distinct technological functions ............ 3

      b.    The DMCA distinguishes between access and copy controls, with different
            provisions, prohibitions and causes of action for each .............................. 5

      c.    Congress declined to prohibit circumvention of copy controls under the DMCA— a
            deliberate decision to preserve fair use .................................................... 6

LEGAL STANDARD .......................................................................................................... 7

ARGUMENT ....................................................................................................................... 7

I.    Plaintiffs Fail To Allege Any Technological Measure that Effectively Controls Access to
      a Work ....................................................................................................................... 7

      a.    Plaintiffs allege copy controls, not access controls ..................................... 8

      b.    Plaintiffs conflate unauthorized access to data files, with unauthorized access to
            works— the latter of which they do not allege ......................................... 11

      c.    YouTube's Terms of Service are not "access controls" under the DMCA ............... 13

      d.    Plaintiffs' conclusory allegations do not salvage their claim ..................... 14

II.   Plaintiffs Fail To Allege Circumvention ................................................................ 14

      a.    Any alleged violation of YouTube's Terms of Service or licensing limits is not
            "circumvention" ....................................................................................... 16

      b.    The alleged avoidance of download "monitoring programs" is not circumvention of
            an access control ...................................................................................... 17

      c.    Circumvention cannot exist where access has been authorized ................. 18

CONCLUSION ................................................................................................................... 18

ii

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adobe Sys. Inc. v. Kornrumpf*,
  780 F. Supp. 2d 988 (N.D. Cal. 2011) ...................................................................11

*Adobe Sys., Inc. v. Stargate Software Inc.*,
  216 F. Supp. 2d 1051 (N.D. Cal. 2002) ..................................................................12

*Apple, Inc. v. Psystar Corp.*,
  673 F. Supp. 2d 931 (N.D. Cal. 2009), *aff'd*, 658 F.3d 1150 (9th Cir. 2011) ...........................15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ......................................................................................7

*Ass'n for Info. Media & Equip. v. Regents of the Univ. of California*,
  No. 2:10-CV-09378-CBM, 2012 WL 7683452 (C.D. Cal. Nov. 20, 2012) ...........................18

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................................................7

*Bungie, Inc. v. Aimjunkies.com*,
  No. C21-0811 TSZ, 2022 WL 16853626 (W.D. Wash. Nov. 10, 2022) ...............................14

*Burroughs Payment Sys., Inc. v. Symco Grp., Inc.*,
  No. 1:10-CV-03029-JEC, 2011 WL 13217738 (N.D. Ga. Dec. 13, 2011).............................13

*CDK Glob., LLC v. Tekion Corp.*,
  No. 25-cv-01394-JSC, 2025 WL 1939951 (N.D. Cal. July 15, 2025)..................................4, 7

*Cordova v. Huneault*,
  No. 25-CV-04685-VKD, 2026 WL 184598 (N.D. Cal. Jan. 23, 2026) ................................10

*Couponcabin LLC v. Savings.com, Inc.*,
  No. 2:14-CV-39-TLS, 2016 WL 3181826 (N.D. Ind. June 8, 2016)....................................14

*Dish Network, L.L.C. v. Vicxon Corp.*,
  No. 12-cv-9-L(WVG), 2013 WL 3894905 (S.D. Cal. July 26, 2013) ..................................15

*Dish Network L.L.C. v. World Cable Inc.*,
  893 F. Supp. 2d 452 (E.D.N.Y. 2012) ...................................................................16

*Disney Enterprises, Inc. v. VidAngel, Inc.*,
  869 F.3d 848 (9th Cir. 2017)...........................................................................4, 12

*Divino Grp. LLC v. Google LLC*,
  No. 19-CV-04749-VKD, 2023 WL 4372701 (N.D. Cal. July 5, 2023)..................................16

iii

*Edland v. Basin Elec. Power Coop.*,
   No. 21-CV-04008-KES, 2021 WL 3080225 (D.S.D. July 21, 2021) .......................................11

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008)...........................................................................................7

*Hattler v. Ashton*,
   No. 16-cv-04099, 2017 WL 11634742 (C.D. Cal. Apr. 20, 2017)
   ..........................................................................1, 4, 5, 6, 7, 8, 9, 10, 12, 15, 17, 18

*hiQ Labs, Inc. v. LinkedIn Corp.*,
   31 F.4th 1180 (9th Cir. 2022)..........................................................................................10

*Incorp Servs. Inc. v. Incsmart.Biz Inc.*,
   No. 11-CV-4660-EJD-PSG, 2012 WL 3685994 (N.D. Cal. Aug. 24, 2012)..........................10

*iSpot.tv, Inc. v. Teyfukova*,
   No. 2:21-CV-06815-MEMF(MARX), 2023 WL 3602806 (C.D. Cal. May 22,
   2023) ........................................................................................................................14

*Lasica v. Am. Online, Inc.*,
   No. CV 15-4230-GW(FFMx), 2015 WL 12791495 (C.D. Cal. Sep. 3, 2015) .......................18

*LivePersons Inc. v. 24/7 Customer, Inc.*,
   83 F. Supp. 3d 501 (S.D.N.Y. 2015).................................................................................14

*London-Sire Recs., Inc. v. Doe 1*,
   542 F. Supp. 2d 153 (D. Mass. 2008) ...............................................................................12

*Matthew Bender & Co. v. W. Pub. Co.*,
   158 F.3d 693 (2d Cir. 1998).............................................................................................11

*MDY Indus., LLC v. Blizzard Ent., Inc.*,
   629 F.3d 928 (9th Cir. 2010).....................................................................................8, 9, 15

*Microsoft Corp. v. EEE Bus. Inc.*,
   555 F. Supp. 2d 1051 (N.D. Cal. 2008) .............................................................................15

*Montgomery v. Jones*,
   355 F. Supp. 3d 720 (M.D. Tenn. 2019)............................................................................11

*Nintendo of America, Inc. v. Chan*,
   No. CV 09-4203 JFW, 2009 WL 2190186 (C.D. Cal. July 21, 2009)................................4, 12

*In re OpenAI, Inc. Copyright Infringement Litig.*,
   No. 25-CV-4315, 2025 WL 3635559 (S.D.N.Y. Dec. 15, 2025)
   ...............................................................................................................13, 14, 15, 16

*RealNetworks, Inc. v. Streambox, Inc.*,
   No. 2:99-CV-02070, 2000 WL 127311 (W.D. Wash. Jan. 18, 2000) ............................1, 4, 12

iv

*Synopsys, Inc. v. InnoGrit, Corp.*,
No. 19-CV-02082-LHK, 2019 WL 4848387 (N.D. Cal. Oct. 1, 2019) ...................................4

*UMG Recordings, Inc. v. Kurbanov*,
No. 18-cv-957-CMH TCB, 2021 WL 6492907 (E.D. Va. Dec. 16, 2021) ..............................11

*United States v. Aitken*,
No. CR-14-143-CAS, 2015 WL 1486925 (C.D. Cal. Mar. 30, 2015) ....................................11

*United States v. Elcom Ltd.*,
203 F. Supp. 2d 1111 (N.D. Cal. 2002) ...................................................................................6

*Universal City Studios, Inc. v. Corley*,
273 F.3d 429 (2d Cir. 2001)....................................................................................................15

*Yout, LLC v. Recording Indus. Ass'n of Am., Inc.*,
633 F. Supp. 3d 650 (D. Conn. 2022) .....................................................................................10

*Zixiang Li v. Kerry*,
710 F.3d 995 (9th Cir. 2013).....................................................................................................7

**Statutes**

17 U.S.C. § 106(1) ...........................................................................................................................3, 4

17 U.S.C. § 202 ..................................................................................................................................11

17 U.S.C. § 1201(a) .......................................1, 2, 3, 4, 5, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18

17 U.S.C. § 1201(b) ..............................................................................................................3, 4, 5, 10

17 U.S.C. § 1201(c) .............................................................................................................................6

**Other Authorities**

*The Digit. Millennium Copyright Act of 1998: U.S. Copyright Off. Summary* (Dec.
1998) ...............................................................................................................................1, 6, 7

H.R. Rep. No. 94–147 (1976) ............................................................................................................12

H.R. Rep. No. 105–551, pt. 1 (1998) .................................................................................................18

NII Copyright Protection Act of 1995: Hearing before Subcomm. On Courts and
Intell. Prop., pt. 2, 104th Cong. 380 (1996) ............................................................................6

*Nimmer on Copyright* § 12A.03............................................................................................................18

Online Copyright Liab. Limitation Act: Hearing before the Subcomm. on Cts. and
Intell. Prop., 105th Cong. 46–47, 49 (1997) ...........................................................................9

S. Rep. No. 105–190 (1998) ....................................................................................................3, 4, 5, 12

U.S. Copyright Office, *Section 1201 of Title 17: A Report of the Register of Copyrights* (June 2017) ..............................................................................................3, 5

NOTICE OF MOT. AND MOT. TO DISMISS; CASE NO. 5:25-CV-10287-EJD-SVK

**MEMORANDUM OF POINTS AND AUTHORITIES**

**STATEMENT OF ISSUES TO BE DECIDED**

Whether the sole count of the Complaint (ECF 1) should be dismissed for failure to state a claim, and the case disposed of in its entirety.

**INTRODUCTION**

The circumvention provision added by Congress in the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201(a)(1), is narrow and specific, designed to provide tailored relief against the circumvention of technological *access controls*. It explicitly excluded from its purview a prohibition on circumventing *copy controls*. This exclusion was intentionally designed "to assure that the public will have the continued ability to make fair use of copyrighted works. Since copying of a work may be a fair use under appropriate circumstances, Section 1201 does not prohibit the act of circumventing a technological measure that prevents copying." U.S. Copyright Office, *The Digit. Millennium Copyright Act of 1998: U.S. Copyright Off. Summary,* at 4 (Dec. 1998), https://www.copyright.gov/legislation/dmca.pdf ("1998 USCO DMCA Summary").

In line with this statutory distinction, and the legislative history and Congressional intent that accompany it, courts have explained that "where § 1201(a)(1) refers to technological measure[s] that control 'access' to a protected work, that section should be interpreted narrowly to exclude technologies that permit access to copyrighted work, but restrict copying." *Hattler v. Ashton,* No. 16-cv-04099, 2017 WL 11634742, at *8 (C.D. Cal. Apr. 20, 2017). For this reason, courts have explicitly excluded controls that "permit[] users to view or watch a copyrighted work but prevent[] them from downloading a permanent copy of the work" from the purview of § 1201(a)(1). *Id.* at *6 (citing *RealNetworks, Inc. v. Streambox, Inc.*, No. 2:99-CV-02070, 2000 WL 127311, at *1-2 (W.D. Wash. Jan. 18, 2000). In other words, courts recognize that § 1201(a)(1) applies to access controls, not copy controls.

Plaintiffs' sole § 1201(a)(1) claim here is based only on copy controls. Specifically, Plaintiffs premise their claim on the alleged downloading of "permanent copies" of works they otherwise make freely accessible via "streaming" on YouTube. Compl. ¶ 37 (explaining "[s]treaming through YouTube and downloading permanent copies provide the user with different

value propositions," and grounding their claim in the latter).

Because courts, including within this Circuit, have explicitly disavowed these same allegations as sufficient to state a claim under § 1201(a)(1), and because allowing such claim would contradict the statutory structure and legislative history of the DMCA, as well as undermine the availability of the fair use defense Congress explicitly sought to preserve, Plaintiffs' claim should be dismissed.

## BACKGROUND

### I.    Plaintiffs' Complaint

Plaintiffs are "content creators who upload their audiovisual content to YouTube." Compl. ¶ 5. In so doing, they "grant each other user of the Service a worldwide, non-exclusive, royalty-free license to access [their] Content through the Service." "Terms of Service," YouTube. https://www.youtube.com/t/terms (last visited Feb. 17, 2026).[1] That content is "intended for streaming on YouTube," Compl. ¶ 15, where the public "can watch and listen to [it] for free." *Id.* ¶ 32.

In their Complaint, Plaintiffs distinguish between "[s]treaming through YouTube and downloading permanent copies." *Id.* ¶ 37. It is the latter activity—the alleged downloading of digital copies—on which Plaintiffs base their circumvention claim. *Id.* ¶ 56 (alleging that NVIDIA's "unauthorized downloads[] each constitut[ed] a separate circumvention event"); *id.* ¶ 70 (accusing NVIDIA of "initiat[ing] millions of individual downloads . . . all without authorization, all in violation of YouTube's access restrictions"). It is likewise the underlying digital files, and not the audiovisual works, that Plaintiffs accuse NVIDIA of accessing without authorization. *Id.* ¶ 118 (alleging NVIDIA "used automated tools for the sole purpose of circumventing YouTube's access barriers and extracting files never made available to the public"); *id.* ¶ 73 (accusing NVIDIA of "improperly access[ing] the actual audio and video files and download[ing] those files").

In line with these allegations, Plaintiffs describe the "technological protection measures" or "TPMs" they accuse NVIDIA of circumventing as "designed to control access to the underlying

---

[1] Plaintiffs incorporate these terms into ECF 1 (the "Complaint") at footnote 1.

video files and prevent direct *downloading* outside permitted channels." *Id.* ¶ 33 (emphasis added); *id.* ¶ 42 (describing YouTube's TPMs as "processes and tools to detect and block unauthorized *downloading*") (emphasis added). Plaintiffs identify those TPMs as "occasionally update[d] APIs, which operate to interfere with *downloaders*" and that "YouTube monitors *downloading* activity and may block IP addresses that make too many *download* attempts in a specified period." *Id.* ¶ 42 (emphasis added). Plaintiffs also assert that YouTube's Terms of Service are themselves TPMs. *Id.* ¶ 117.

Plaintiffs do not allege any access controls—to include password protection, authentication codes, license keys, encryption, or otherwise—that control access to their audiovisual works themselves. Nor do Plaintiffs allege that NVIDIA decrypted, descrambled, deactivated or otherwise manipulated any such controls.

## II.    Access Controls Versus Copy Controls

### *a.  Access and copy controls perform distinct technological functions*

Courts, Congress, and the DMCA distinguish between access controls and copy controls. An access control is "a technological measure" that "in the ordinary course of its operation, requires the application of information, or a process or treatment, with the authority of the copyright owner, to *gain access to* the work." 17 U.S.C. § 1201(a)(3)(B) (emphasis added). A copy control, by contrast, is "a technological measure" that "in the ordinary course of its operation, prevents, restricts, or otherwise *limits the exercise of a right of a copyright owner* under this title," *id.* § 1201(b)(2)(B) (emphasis added), which includes the right of "reproduction" or copying. *Id.* § 106(1).

Access controls function to limit access to the "plain text of the work," here – the expressive elements of the audiovisual content itself. S. Rep. No. 105–190, at 12 (1998) ("1998 Senate Judiciary Report"). Paradigmatic access controls include "password requirement[s] limiting access to a website to paying customers" and "authentication codes." U.S. Copyright Office, *Section 1201 of Title 17: A Report of the Register of Copyrights* at 6 (June 2017), https://www.copyright.gov/policy/1201/section-1201-full-report.pdf. Such password requirements and authentication codes operate by preventing those without "authority of the copyright owner"

1    from "gain[ing] access to the work," effectively controlling access to the works they protect.  17

2    U.S.C. § 1201(a)(3)(B).  *See also Synopsys, Inc. v. InnoGrit, Corp.*, No. 19-CV-02082-LHK, 2019

3    WL 4848387, at *7 (N.D. Cal. Oct. 1, 2019) (finding effective access controls to exist in the forms

4    of encrypted control code that permits software to run only upon valid key decryption); *CDK Glob.,*

5    *LLC v. Tekion Corp.*, No. 25-cv-01394-JSC, 2025 WL 1939951, at *9 (N.D. Cal. July 15, 2025)

6    (finding access controls in the form of specialized hardware and firewalls that permit only

7    authorized networks, devices and credentialed users to access the copyrighted software).

8        In line with this understanding, and with respect to videos specifically, the Ninth Circuit

9    and courts within it have found access controls to exist where TPMs control the ability to *view or*

10   *watch the video content itself*.  *Disney Enterprises, Inc. v. VidAngel, Inc.*, 869 F.3d 848 (9th Cir.

11   2017) (finding access controls in the form of a Content Scramble System and Advanced Access

12   Content System—encryption mechanisms that rendered videos unplayable except on licensed

13   players able to lawfully decrypt the video content); *RealNetworks, Inc.*, 2000 WL 127311  (finding

14   access controls over video content in the form of a proprietary authentication sequence, or "Secret

15   Handshake," required before the content would stream); *Nintendo of America, Inc. v. Chan*, No.

16   CV 09-4203 JFW, 2009 WL 2190186 (C.D. Cal. July 21, 2009) (finding access controls over video

17   game content in the form of both design-based and technological measures through which

18   commands and data must be exchanged in order for the games to play).

19       Copy controls, by contrast, are "technological measure[s] that prevent[] copying."  1998

20   USCO DMCA Summary at 4.  The DMCA describes them under § 1201(b) as "technological

21   measure[s] that effectively protect[] a right of a copyright owner under this title in a work or a

22   portion thereof," which includes the right of "reproduction."  17 U.S.C. §§ 1201(b)(2)(B), 106(1).

23   Unlike access controls, copy controls "do[] nothing to prevent access to the plain text of the work,

24   but [are] designed to prevent that work from being copied."  *See* 1998 Senate Judiciary Report at

25   12.  Courts in this Circuit have described copy controls as "technological measures that allow some

26   forms of 'access' but restrict other uses of the copyrighted work . . . *includ[ing] 'streaming media,*

27   *which permits users to view or watch a copyrighted work but prevents them from downloading a*

28   *permanent copy of the work*.'"  *Hattler*, 2017 WL 11634742, at *6 (citing *RealNetworks, Inc.*, 2000

4

WL 127311, at *1-2) (emphasis added).

This distinction between access and copy controls is critical, because, as detailed below, Plaintiffs' § 1201(a) claim is viable only if they allege circumvention of access controls, not copy controls.

### b. The DMCA distinguishes between access and copy controls, with different provisions, prohibitions, and causes of action for each

The DMCA contains differing prohibitions with respect to access versus copy controls. For access controls, the statute provides that "[n]o person shall" (1) "circumvent" an access control, 17 U.S.C. § 1201(a)(1)(A), or (2) "traffic in any technology, product, service, device, component, or part thereof, that is primarily designed or produced for the purpose of circumventing" an access control, *id.* § 1201(a)(2)(A). For copy controls, the statute provides only that "[n]o person shall . . . traffic in any technology, product, service, device, component, or part thereof, that is primarily designed or produced for the purpose of circumventing" a copy control. *Id.* § 1201(b)(1)(A). In other words, the DMCA's *trafficking* prohibitions apply to both access controls and copy controls, but its *circumvention* prohibitions apply only to access controls. There is no prohibition under the DMCA against circumventing copy controls. 1998 Senate Judiciary Report at 12 ("there is no prohibition on conduct in 1201(b) akin to the prohibition on circumvention conduct in 1201(a)(1)").

This division in the statutory structure has been illustrated by the Copyright Office as follows:

| 17 U.S.C. § 1201 | Circumvention Prohibition? | Trafficking Prohibition? |
|---|---|---|
| Access Controls | Yes § 1201(a)(1) | Yes § 1201(a)(2) |
| Copy Controls | No | Yes § 1201(b) |

U.S. Copyright Office, *Section 1201 of Title 17: A Report of the Register of Copyrights*, at 6 (emphasis added).

### c. *Congress declined to prohibit circumvention of copy controls under the DMCA – a deliberate decision to preserve fair use*

Congress's decision to exclude copy controls from its prohibition on circumvention was an intentional and well-reasoned one.  Members of the media industry had lobbied for more expansive circumvention prohibitions to include circumvention of copy controls.  *See* NII Copyright Protection Act of 1995: Hearing before Subcomm. On Courts and Intell. Prop., pt. 2 at 380, 104th Cong. 380 (1996) (argument by Viacom that prohibitions should cover "the actual circumvention" of "anti-copying technologies").  But Congress declined to include them, including to protect fair use, as highlighted by the tech coalitions.  *Id.* at 83, 432 (arguing that Congress must "protect the customary and reasonable fair use rights of consumers" and that "any 'anti-circumvention' provision must be carefully drafted so as not to prevent legitimate activities").

Had Congress permitted a cause of action under the DMCA for the circumvention of *copy* controls, such prohibition would have impeded legal copying which qualifies as fair use, undermining the fair use doctrine and prohibiting activity authorized by § 107 of the Copyright Act.  It was the very desire to avoid this result that drove the distinction between access and copy control prohibitions that Congress ultimately adopted.  As the Copyright Office explained, "[t]his distinction was employed to assure that the public will have the continued ability to make fair use of copyrighted works.  Since copying of a work may be a fair use under appropriate circumstances, Section 1201 does not prohibit the act of circumventing a technological measure that prevents copying."  1998 USCO DMCA Summary at 4; *see also United States v. Elcom Ltd.,* 203 F. Supp. 2d 1111, 1119 (N.D. Cal. 2002) ("Congress sought to prohibit certain efforts to unlawfully circumvent protective technologies, while at the same time preserving users' rights of fair use."). In fact, "Congress expressly disclaimed any intent to impair any person's rights of fair use," *id.* at 1120–21, codifying the preservation of fair use eligibility in the DMCA itself.  17 U.S.C. § 1201(c)(1) ("[n]othing in this section shall affect rights, remedies, limitations, or defenses to copyright infringement, *including fair use*, under this title.") (emphasis added).

Nor was there any need for the DMCA to prohibit circumvention of copy controls, which is the domain of a copyright infringement claim under the Copyright Act, and which provides for

the availability of a fair use defense, unlike the DMCA. *Hattler*, 2017 WL 11634742, at * 7. Here, Plaintiffs attempt to shoehorn their copy control circumvention allegations into the DMCA framework, the very thing Congress sought to avoid.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Dismissal is warranted where "a complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013). In evaluating the sufficiency of a pleading, a court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal citations omitted). A plaintiff must do more than offer "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citation omitted). Rather, the complaint must plead enough facts to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ARGUMENT

Section 1201(a)(1) provides that "[n]o person shall circumvent a technological measure that effectively controls access to a work protected under [the Copyright Act]." 17 U.S.C. § 1201(a)(1). To state a claim under this statute, Plaintiffs must thus plausibly allege both (1) "[a] technological measure that effectively controls access to" their work, *i.e.*, an "access control," and (2) that NVIDIA circumvented that access control. *CDK Glob., LLC*, 2025 WL 1939951, at *8. Plaintiffs plead neither.

### I.    Plaintiffs Fail To Allege Any Technological Measure that Effectively Controls Access To a Work

Plaintiffs fail to plead the first element of their § 1201(a) claim because they do not allege the existence of any qualifying access controls over the YouTube videos in question. The DMCA defines an access control as "a technological measure" that "in the ordinary course of its operation,

7

1    requires the application of information, or a process or a treatment, . . . to <u>gain access to</u> the work."

2    *Id.* § 1201(a)(3)(B) (emphasis added).  Put differently, for a technological measure to qualify as an

3    access control, a user must encounter and overcome that measure to obtain access to the copyrighted

4    expression.  *See MDY Indus., LLC v. Blizzard Ent., Inc.,* 629 F.3d 928, 952 (9th Cir. 2010) ("[s]ince

5    a player need not encounter Warden to access WoW's individual non-literal elements, Warden does

6    not effectively control access to those elements.").  In line with this precedent, courts in this Circuit

7    have explained that "where § 1201(a)(1) refers to technological measure[s] that control 'access' to

8    a protected work, that section should be interpreted narrowly to exclude technologies that permit

9    access to copyrighted work, but restrict copying."  *Hattler*, 2017 WL 11634742, at *8.

10    Here, Plaintiffs themselves concede that users have access to "watch and listen" to YouTube

11    content for free.  *E.g.*, Compl. ¶ 32.  And Plaintiffs do not allege any technology that requires the

12    application of information, or a process, or treatment to access—*i.e.* view— their videos.  Rather,

13    Plaintiffs allege here the very fact pattern courts have carved out of § 1201(a)(1), namely, where

14    access is permitted but copying restricted.

15                            *a.  Plaintiffs allege copy controls, not access controls*

16    *First*, rather than allege the existence of any qualifying *access* controls, Plaintiffs rest their

17    claim on alleged *copy* controls for which a § 1201(a) claim is not available.  17 U.S.C. §

18    1201(a)(1)(A).  Plaintiffs' claim therefore seeks to collapse Congress's careful distinction in

19    defining different prohibitions with respect to access versus copy controls, threatening the

20    preservation of fair use defenses which the DMCA was drafted to maintain.  *See MDY Indus.,* 629

21    F.3d at 946 ("[W]e read the differences in structure between § 1201(a) and (b) as reflecting

22    Congress's intent to address distinct concerns by creating different rights with different elements").

23    That Plaintiffs allege copy—not access—controls is evident from the face of the Complaint,

24    which concerns itself not with controls prohibiting *access* to Plaintiffs' videos, but rather the

25    downloading, or copying, of them.  Compl. ¶ 32 (recognizing that users "can watch and listen to

26    music videos for free. . . but YouTube does not give users access to or allow downloading of the

27    digital files for the content").  This concern with downloading is echoed throughout Plaintiffs'

28    allegations.  *See* Compl. ¶ 4 (describing NVIDIA's offending conduct as "scraping and

8

*downloading* . . . files"); *id.* ¶ 39 (describing "prohibitions on *downloading* content"); *id.* ¶ 40 (discussing limitations to the "'*download*' option" and explaining that "the audiovisual files cannot be transferred to any other device, but remain only for streaming on the app"); *id.* ¶ 42 ("YouTube uses technological processes and tools to detect and block *unauthorized download[s]*); *id.* ¶ 44 (explaining that in "rely[ing] on the TPMs contained in YouTube's Terms of Service. . . [c]ontent creators, including Plaintiffs and Class Members, expect that their works will not be *copied*"); *id.* ¶ 8 (describing plaintiffs' works as having been "unlawfully *copied*"); *id.* ¶ 69 ("every act of *downloading* . . . is a separate unauthorized *copying* event.") (emphases added to all).

Download restrictions are copy controls, not access controls. *See* Online Copyright Liab. Limitation Act: Hearing before the Subcomm. on Cts. and Intell. Prop., 105th Cong. 46–47, 49 (1997) (Register of Copyrights Marybeth Peters characterizing "technology that blocks users from downloading copies" as a "measure[] that prevent[s] acts of infringement, rather than access"). Because a user need not "encounter" them to access the works at issue, for example to watch the videos via streaming, those restrictions "do[] not effectively control access" to the works. *See MDY Indus.,* 629 F.3d at 943. *See also* Compl. ¶ 37 (recognizing this distinction and contrasting the "[s]treaming through YouTube" which permits access to their videos, with "downloading permanent copies" of which they complain). The same is true of the download and use restrictions Plaintiffs allege here. Compl. ¶ 32 (recognizing that users "can watch and listen to music videos for free. . . but YouTube does not give users access to or allow downloading of the digital files for the content").

*Hattler* is instructive regarding the fatality of this flaw. As here, the *Hattler* plaintiff alleged that defendants violated § 1201(a)(1)(A) when they downloaded works in a manner that circumvented the technological protections on websites where the works were available for streaming. *Compare Hattler*, 2017 WL 11634742, at *6 ("streaming media . . . permits users to view or watch a copyrighted work but prevents them from downloading a permanent copy of the work,"), *with* Compl. ¶¶ 36, 39 (end users "have the ability to view (i.e., stream) through YouTube's controlled environment" but YouTube has "prohibitions on downloading content"). Defendants moved to dismiss for failure to state a claim, arguing that because the technological protections of

those websites restricted downloading, but not general access, § 1201 did not apply. *Hattler*, 2017 WL 11634742, at *5.

The court sided with defendants, finding that "the statutory structure, appellate precedent and legislative history of the DMCA all support the same conclusion . . . [W]here § 1201(a)(1) refers to technological measure[s] that control 'access' to a protected work, that section should be interpreted narrowly to exclude technologies that permit access to copyrighted work, but restrict copying." *Id.* at *8. In this way, the *Hattler* court's analysis aligned with the understanding of "access" applied across statutory contexts, including by both the Ninth Circuit and this Court. *See hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1198-99 (9th Cir. 2022) ("a defining feature of public websites is that their publicly available sections lack limitations on access; instead, those sections are open to anyone with a web browser;" "[w]ith regard to websites made freely accessible on the Internet, the 'breaking and entering' analogue invoked so frequently during congressional consideration has no application, and the concept of 'without authorization' is inapt"); *Incorp Servs. Inc. v. Incsmart.Biz Inc.*, No. 11-CV-4660-EJD-PSG, 2012 WL 3685994 at *3 (N.D. Cal. Aug. 24, 2012) (distinguishing between "the circumvention of technological access barriers" and "violation of use restrictions") (internal quotations omitted). For these reasons, and because the plaintiff in *Hattler*, like Plaintiffs here, alleged the circumvention not of access, but rather copy controls, the *Hattler* court held that plaintiff could not state a claim for relief under § 1201(a)(1). *Id.* (dismissing § 1201(a)(1) claim with prejudice). This same result follows in the present case.[2]

---

[2] The recent decision in *Cordova v. Huneault*, No. 25-CV-04685-VKD, 2026 WL 184598, (N.D. Cal. Jan. 23, 2026) does not change this result. There, the Court did not have before it, and thus did not consider, the arguments made here, including with respect to the legislative history of § 1201; the distinction between access and copy controls; the public policy and fair use implications underlying this distinction; or the surrounding case law, including *Hattler*. Instead, *Cordova* relied on inapposite, out-of-circuit law, including *Yout, LLC v. Recording Indus. Ass'n of Am., Inc.*, 633 F. Supp. 3d 650 (D. Conn. 2022)—a primarily trafficking-based case, brought in a declaratory

### b. Plaintiffs conflate unauthorized access to data files with unauthorized access to works—the latter of which they do not allege

*Second*, in an apparent attempt to cure the fatal deficiency above, Plaintiffs allege that "scraping or bulk downloading is not merely copying material already provided; it is an act of unauthorized access to data files that YouTube affirmatively withholds from public download." Compl. ¶ 38. But Plaintiffs' position conflates access control over "data files"—the storage units in which works are held—with access control over the "works" themselves. The two are not the same, a fact Plaintiffs themselves recognize. *Id.* ¶ 119 (distinguishing between "viewing a YouTube video," and "access to the underlying file," explaining that "[t]his distinction is critical."). It is control over access to works, rather than underlying files, that is relevant to the prohibitions of Section 1201(a).

A "work," under the Copyright Act, refers to the protected expressive content that is subject to copyright, not the digital file in which that content is stored. *See Matthew Bender & Co. v. W. Pub. Co.*, 158 F.3d 693, 702 (2d Cir. 1998) ("The Copyright Act establishes a 'fundamental distinction' between the original work of authorship and the material object in which that work is 'fixed.'"); *Adobe Sys. Inc. v. Kornrumpf*, 780 F. Supp. 2d 988, 994 (N.D. Cal. 2011) ("A copyright

─────────────────────────

judgment posture, which is currently on appeal to the Second Circuit; *Edland v. Basin Elec. Power Coop.*, No. 21-CV-04008-KES, 2021 WL 3080225 (D.S.D. July 21, 2021)—which concerned the use of a cell phone to record streaming videos; and *UMG Recordings, Inc. v. Kurbanov*, No. 18-cv-957-CMH TCB, 2021 WL 6492907 (E.D. Va. Dec. 16, 2021) which per the Court's own description analyzed the downloading of YouTube files under § 1201(**b**)— demonstrating the *Cordova* court's conflation of § 1201(a) and (b) and the proper analysis of these allegations as implicating a copy control. This Court is not bound by the *Cordova* decision. *United States v. Aitken*, No. CR-14-143-CAS, 2015 WL 1486925, at \*6 (C.D. Cal. Mar. 30, 2015) ("Judicial decisions do not stand as binding 'precedent' for points that were not raised, not argued, and hence not analyzed.") (internal citation omitted).

1   attaches to an original work of authorship, not the particular medium in which it was. . . fixed.").

2   In this way, "Congress drew 'a fundamental distinction between the 'original work' which is the

3   product of 'authorship' and the multitude of material objects in which it can be embodied."

4   *London-Sire Recs., Inc. v. Doe 1*, 542 F. Supp. 2d 153, 170 (D. Mass. 2008).  *See also Adobe Sys.,*

5   *Inc. v. Stargate Software Inc.*, 216 F. Supp. 2d 1051, 1055 (N.D. Cal. 2002) (quoting 17 U.S.C. §

6   202 ("[o]wnership of a copyright" is distinct from the "ownership of any material object in which

7   the work is embodied"); *Montgomery v. Jones*, 355 F. Supp. 3d 720, 726 (M.D. Tenn. 2019) ("It is

8   well settled that copyright law recognizes a distinction between a copyright-protected work and the

9   'physical embodiment' of that work, with the subject matter of copyright encompassing only the

10  former.").  Applying this distinction, courts have explained that "in the sense of the [Copyright

11  Act], a 'book' is not a work of authorship, but is a particular kind of 'copy.'"  *London-Sire Recs.,*

12  *Inc.*, 542 F. Supp. 2d at 170 (quoting H.R. Rep. 94–1476 at 53 (1976), reprinted in 1976

13  U.S.C.C.A.N. at 5666).

14       The DMCA governs access to "the plain text of a work," not any particular files or other

15  physical embodiments containing the work.  *See* 1998 Senate Judiciary Report at 12.  *See also* §

16  1201(a)(3)(B) (referring to "technological measure[s] [that] "effectively control[] access to a

17  work").  For this reason, when courts consider access controls over audiovisual works specifically,

18  they inquire not into whether a technological measure controls access to the physical embodiment

19  containing the video (i.e. a .mp4 file, DVD, or video game cartridge), but rather whether the

20  technological measure prevents a user from <u>viewing</u> or <u>watching</u> the video itself.  *See VidAngel*,

21  869 F.3d 848 (access controls in the form encryption mechanisms <u>rendered videos unplayable</u>

22  except on licensed players able to lawfully decrypt the video content); *RealNetworks, Inc.*, 2000

23  WL 127311 (access controls in the form of authentication sequences <u>prevented videos from</u>

24  <u>streaming</u> in the absence of a technological "Secret Handshake"); *Nintendo of America*, 2009 WL

25  2190186 (access controls <u>prevented games from playing</u> absent the necessary exchange of

26  commands and data).

27       As the Complaint concedes, the "plain text" of the works here—Plaintiffs' videos—are

28  freely accessible by the public via streaming.  Compl. ¶¶ 3, 32, 36.  Unlike in *VidAngel*,

*RealNetworks*, or *Nintendo*, Plaintiffs do not allege any controls over the streaming, or playing, or viewing of those videos. *See* supra. Rather, by their own admission, the "technological protection measures" Plaintiffs plead are "designed to control access *to the underlying video files*." *Id.* ¶ 33 (emphasis added). *See also id.* ¶¶ 118-119 (alleging NVIDIA "extract[ed] *files* never made available to the public" and drawing a "distinction" between "viewing a YouTube video through YouTube's platform" —the access contemplated by the DMCA—and "provid[ing] access *to the underlying file*") (emphasis added). Because Plaintiffs do not, and cannot, plead any access controls over the works themselves, their § 1201(a) claim is not viable. *Hattler*, 2017 WL 11634742, at *8.

### c. *YouTube's Terms of Service are not "access controls" under the DMCA*

*Third*, Plaintiffs' allegations surrounding YouTube's Terms of Service are irrelevant to their § 1201(a) claim because those Terms of Service are not access controls; they are not a "technological measure," nor do they require the "application of information, or a process or a treatment, . . . to gain access to" Plaintiffs' works. 17 U.S.C. *Id.* § 1201(a)(3)(B). This was the conclusion reached by Judge Stein in *In re OpenAI, Inc. Copyright Infringement Litig.*, No. 25-CV-4315, 2025 WL 3635559 (S.D.N.Y. Dec. 15, 2025). There, the plaintiff alleged that OpenAI bypassed "robots.txt directives," or "machine-readable instructions . . . which tell web crawlers which areas of the site the bot is allowed or disallowed from accessing and indexing," bringing a § 1201(a) based on that alleged circumvention. *Id.* at *4. The court dismissed that claim, holding that the robot.txt files were not access controls because they "do not 'effectively control' access to the content any more than a sign requesting that visitors 'keep off the grass' effectively controls access to a lawn." *Id*.

The same reasoning applies here. Even if YouTube's Terms of Service purported to impose access restrictions, a user "may access the content without taking any affirmative step other than impertinently disregarding the request embodied in the [Terms of Service]." *Id.*; *see also Burroughs Payment Sys., Inc. v. Symco Grp., Inc.*, No. 1:10-CV-03029-JEC, 2011 WL 13217738, at *4 (N.D. Ga. Dec. 13, 2011) ("a copyright notice is not a 'technological measure that effectively controls access.' The mere presence of a notice does not 'require the application of information, or

a process or a treatment, with the authority of the copyright owner, to gain access to the work.'") (citation modified); *Couponcabin LLC v. Savings.com, Inc.*, No. 2:14-CV-39-TLS, 2016 WL 3181826, at *6 (N.D. Ind. June 8, 2016) (granting motion to dismiss DMCA claim absent allegations that "a user of the Plaintiff's website is required to apply 'information or a process or treatment' to gain access (e.g., by providing a password)").  For these same reasons, Terms of Service are not access controls and cannot form the basis of a § 1201(a) claim.

### d.  Plaintiffs' conclusory allegations do not salvage their claim

*Finally*, to the extent Plaintiffs allege any TPMs at all, those allegations are conclusory at best, and, even if taken as true, do not allege the required application of a process, or treatment or information, necessary to establish the existence of such access controls. *See* Compl. ¶ 33 (alleging that "YouTube deploys technological protection measures ("TPMs") designed to control access," but failing to identify what those TPMs are); *id.* ¶ 5 (referencing "YouTube's anti-circumvention software," but failing to identify what that "anti-circumvention software" is); *id.* ¶ 34 (explaining that "[YouTube's Terms of Service] operate together with TPMs to prevent unlicensed access to creators' videos," but failing to allege what those TPMs are); *id.* ¶ 90 (alleging that NVIDIA "violated YouTube's rules and the TPMs that enforce them," but again failing to identify what those TPMs are); *id.* ¶ 33 (suggesting that the YouTube TPMs at issue consist of "streaming-only delivery, application programming interface ("API") usage limits, and access controls," without identifying what any such "access controls" are).  These conclusory allegations, which merely recite the alleged existence of "access controls" without identifying what those access controls are, what they do, or how they allegedly control any access, cannot salvage Plaintiffs' claim. *See Bungie, Inc. v. Aimjunkies.com*, No. C21-0811 TSZ, 2022 WL 16853626, at *3 (W.D. Wash. Nov. 10, 2022) (granting motion to dismiss because Plaintiffs "merely recite[d]" that its software was protected by a TPM).

## II.    Plaintiffs Fail To Allege Circumvention

Even if they had alleged a qualifying access control (they cannot), Plaintiffs' § 1201(a) claim fails because the conduct they allege, even if accepted as true, does not constitute "circumvention." "[T]o 'circumvent a technological measure' means to descramble a scrambled

work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner." 17 U.S.C. § 1201(a)(3)(A). In other words, "'circumvention' requires some manipulation of the technological measure at hand." *iSpot.tv, Inc. v. Teyfukova*, No. 2:21-CV-06815-MEMF(MARX), 2023 WL 3602806, at *6 (C.D. Cal. May 22, 2023). *See also In re OpenAI, Inc. Copyright Infringement Litig*., 2025 WL 3635559, at *5 ("Plaintiff asserting a DMCA section 1201 claim must allege that a defendant 'affirmatively perform[ed] an action that disables or voids' the technological control measure, akin to descrambling or decrypting a work or 'breaking and entering (or hacking) into computer systems.'") (*quoting LivePersons Inc. v. 24/7 Customer, Inc.*, 83 F. Supp. 3d 501, 509 (S.D.N.Y. 2015)).

In line with the above, the Ninth Circuit has explained that Congress envisioned circumvention as akin to "breaking into a locked room in order to obtain a copy of a book." *MDY Indus.,* 629 F.3d at 947 (quoting H.R. Rep. No. 105–551, pt. 1, at 17 (1998)); *see also Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 453 (2d Cir. 2001) (finding circumvention where a program functioned to decrypt a TPM like "a skeleton key that can open a locked door, a combination that can open a safe, or a device that can neutralize the security device attached to a store's products."). For this reason, courts consistently hold that circumvention requires the defendant to bypass, decrypt, or render ineffective a technological measure that performs a gatekeeping function. *See Apple, Inc. v. Psystar Corp*., 673 F. Supp. 2d 931, 934, 941 (N.D. Cal. 2009), *aff'd*, 658 F.3d 1150 (9th Cir. 2011) (using decryption software to decrypt otherwise inaccessible files protected by Apple's "lock-and-key technological measures" is circumvention); *Microsoft Corp. v. EEE Bus. Inc.*, 555 F. Supp. 2d 1051, 1059 (N.D. Cal. 2008) (distributing a "Volume License Key" to "unlock [Microsoft's] media programming" is circumvention; *Dish Network, L.L.C. v. Vicxon Corp.*, No. 12-cv-9-L(WVG), 2013 WL 3894905, at *2, *7 (S.D. Cal. July 26, 2013) (using "piracy software" to "mimic a DISH Network smart card" to decrypt broadcast signals containing copyrighted programming is circumvention). On the other hand, and where the alleged "circumvention" is the violation of instructions or terms, where the works are already accessible, or where the alleged circumvention is of download restrictions rather than

access controls, courts have found that the circumvention necessary to state a § 1201(a) claim does not exist.  *See In re Open AI, Inc. Copyright Infringement Litig.*, 2025 WL 3635559, at *5 ("disregard[ing] instructions that were contained in robot.txt files" is not circumvention); *Dish Network L.L.C. v. World Cable Inc.*, 893 F. Supp. 2d 452, 464-65 (E.D.N.Y. 2012) (no circumvention where "there are no facts in the first amended complaint from which the Court can infer that they circumvented the 'digital walls' that protected the copyrighted works. . . .  In this case, the room was already unlocked, and therefore the Defendants did not have to 'break in' to gain access to the copyrighted work"); *Hattler*, 2017 WL 11634742, at *8 (no circumvention where videos were accessible to the public on websites).

For the reasons below, and because Plaintiffs do not allege any "break-in," either through decryption, bypassing of password protection, use of counterfeit license keys, or otherwise, and because the only "circumventions" alleged would instead be terms of service violations and the circumvention of download controls, Plaintiffs' allegations do not constitute "circumvention" under the statute.

### a. *Any alleged violation of YouTube's Terms of Service or licensing limits is not "circumvention"*

To the extent Plaintiffs allege "circumvention" of YouTube's "terms of service and licensing limits," Compl. ¶ 53, those terms of service are not technological measures or access controls capable of being broken through—they are contractual restrictions.  *See Divino Grp. LLC v. Google LLC*, No. 19-CV-04749-VKD, 2023 WL 4372701, at *5 (N.D. Cal. July 5, 2023) (YouTube's Terms of Service "are contractual agreements between YouTube and its users."). Other courts have dismissed § 1201(a) claims under parallel circumstances, for this reason.  *See In re OpenAI, Inc. Copyright Infringement Litig.*, 2025 WL 3635559 at *5 (dismissing § 1201(a) claim based on alleged scraping of web content contrary to robot.txt directives, and finding that "[a]t most, [plaintiff] alleges that OpenAI disregarded the instructions that were contained in robots.txt files. This is not 'circumvention' under the DMCA.").  Just as the disregard of robot.txt directives in *In re OpenAI* did not suffice to state a claim for circumvention, neither does any alleged disregard of terms of service or licensing limits, here.

16

1

2

### b. The alleged avoidance of download "monitoring programs" is not circumvention of an access control

3    The only other "circumvention" Plaintiffs allege is the avoidance of "monitoring programs"

4    which "detect and block unauthorized downloading." Compl. ¶¶ 42, 78, 86. Specifically, Plaintiffs

5    allege that "YouTube monitors downloading activity and may block IP addresses that make *too*

6    *many download attempts* in a *specified period*," *id.* ¶ 42 (emphasis added), alleging that NVIDIA

7    "defeat[ed]" these "monitoring programs" by "refresh[ing] IP addresses." *Id.* ¶ 78. These copying-

8    related allegations address "the subsequent actions of a person once he or she had obtained

9    authorized access to a copy of a work," which renders them outside the scope of Section 1201(a).

10   H.R. Rep. No. 105-551, pt. 1, at 18 (1998).

11   For this reason, in *Hattler*, even though the defendant conceded circumvention of

12   technological measures designed to prevent downloading, the court dismissed the § 1201(a) claim

13   because the circumvented technological measures did not control access to the works, which "were

14   publicly available for streaming." 2017 WL 11634742, *6-7. In so holding, the court explained

15   that "where § 1201(a)(1) refers to technological measure[s] that control 'access' to a protected

16   work, that section should be interpreted narrowly to exclude technologies that permit access to

17   copyrighted work, but restrict copying." *Id.* at *8.

18   The allegations in *Hattler* mirror those at issue here. As in *Hattler*, Plaintiffs' works are

19   accessible to the public via streaming. *Compare* Compl. ¶¶ 3, 15 (alleging Plaintiffs' works were

20   "intended for streaming on YouTube," which "allows the public to view audiovisual works"), *with*

21   *Hattler*, 2017 WL 11634742, at *6 (noting plaintiff's works "were publicly available for

22   streaming"). Also, the technology allegedly circumvented in both cases controlled downloading of

23   those works, not access to them. *Compare* Compl. ¶¶ 42, 78 (alleging avoidance of monitoring

24   programs that "block IP addresses that make too many download attempts in a specified period"),

25   *with Hattler*, 2017 WL 11634742, at *5 (alleging defendant "downloaded the [w]orks in a manner

26   that circumvented the technological protections on the websites where the Works were available

27   for streaming."). Because, as the *Hattler* court explained, § 1201(a)(1) "should be interpreted

28   narrowly to exclude technologies that permit access to copyrighted work, but restrict copying," *id.*

17

1   at *8, including specifically "streaming media, which permits users to view or watch a copyrighted

2   work but prevents them from downloading a permanent copy of the work," *id.* at *6 —the precise

3   fact pattern Plaintiffs allege here, Compl. ¶ 37, this Court should reach the same result and dismiss

4   Plaintiffs' claim.

5                    ***c.  Circumvention cannot exist where access has been authorized***

6        Further, because NVIDIA's access to the works was authorized by license under YouTube's

7   Terms of Service, Plaintiffs cannot plead circumvention as a matter of law.  "[A] person who

8   engages in prohibited usage of a copyrighted work to which he has lawful access does not fall afoul

9   of any provision of Section 1201."  *Ass'n for Info. Media & Equip. v. Regents of the Univ. of*

10  *California*, No. 2:10-CV-09378-CBM, 2012 WL 7683452, at *9 (C.D. Cal. Nov. 20, 2012) (*quoting*

11  *Nimmer on Copyright* § 12A.03).  Here, Plaintiffs licensed access to the audiovisual works in

12  question  when  they  uploaded  their  videos  to  YouTube.   *See*  "Terms  of  Service,"  YouTube,

13  https://www.youtube.com/t/terms  (providing  that  in  uploading  their  videos  to  the  YouTube

14  platform, Plaintiffs "grant[ed] each other user of the Service a worldwide, non-exclusive, royalty-

15  free license to access [their] Content through the Service.").  As a result, and because NVIDIA's

16  *access* itself was authorized, Plaintiffs' cannot state a § 1201 claim as a matter of law.  *Lasica v.*

17  *Am. Online, Inc.*, No. CV 15-4230-GW(FFMx), 2015 WL 12791495, at *5 (C.D. Cal. Sep. 3, 2015)

18  (no circumvention where plaintiff "provided access to the Photograph—to Defendant as well as the

19  general public—through Flickr.com.").

20                                    **CONCLUSION**

21        Because Plaintiffs have not—and cannot—plead an effective technological access control

22  or the circumvention thereof, their § 1201 claim fails as a matter of law.  *Hattler*, 2017 WL

23  11634742, at *8 (holding that where, as here, the works were accessible on public websites, "any

24  effort to amend the [complaint] would be futile" and dismissing § 1201(a)(1) claim with prejudice).

25  For the reasons detailed herein, this Court should hold the same, dismissing Plaintiffs' § 1201 claim

26  with prejudice and disposing of this case in its entirety.

27

28

1    Dated: February 23, 2026            Respectfully submitted,

2

3                                         By: */s/ Lauren Cury*

4                                    **HOGAN LOVELLS US LLP**
Vassi Iliadis (Bar No. 163450)

5                                    1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067

6                                    Telephone: (310) 785-4600
Facsimile: (310) 785-4601

7                                    vassi.iliadis@hoganlovells.com

8                                    Lauren B. Cury (*pro hac vice*)
Anna Kurian Shaw (*pro hac vice*)

9                                    555 13th Street NW
Washington, DC 20004

10                                  Telephone: (202) 637-5600
lauren.cury@hoganlovells.com

11                                  anna.shaw@hoganlovells.com

12                                  *Attorneys for Defendant*
*NVIDIA CORPORATION*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28