**HOGAN LOVELLS US LLP**
Vassi Iliadis (Bar No. 163450)
Joe O'Connor (Bar No. 274421)
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 785-4600
Facsimile: (310) 785-4601
vassi.iliadis@hoganlovells.com
joe.oconnor@hoganlovells.com

Lauren B. Cury (*pro hac vice*)
Anna Kurian Shaw (*pro hac vice*)
Danielle Desaulniers Stempel (*pro hac vice*)
Casey Magersupp (*pro hac vice*)
555 13th Street NW
Washington, DC 20004
Telephone: (202) 637-5600
lauren.cury@hoganlovells.com
anna.shaw@hoganlovells.com
danielle.stempel@hoganlovells.com
casey.magersupp@hoganlovells.com

Katherine B. Wellington (*pro hac vice*)
125 High Street, Suite 2010
Boston, MA 02110
Telephone: (617) 702-7747
katherine.wellington@hoganlovells.com

Gurtej Singh (Bar No. 286547)
Christine Pinnkathok (Bar No. 353430)
4 Embarcadero Center, Suite 3500
San Francisco, CA 94111
Telephone: (415) 374-2300
tej.singh@hoganlovells.com
christine.pinnkathok@hoganlovells.com

*Attorneys for Defendant NVIDIA Corporation*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| TED ENTERTAINMENT, Inc., et al., | Case No.: 5:25-CV-10287-EJD-SVK |
| Plaintiffs, | **REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UNDER FED. R. CIV. P. 12(b)(6)** |
| v. | |
| NVIDIA CORPORATION, | Judge: Hon. Edward J. Davila |
| Defendant. | Courtroom: 4, 5th Floor<br>Hearing Date: July 23, 2026<br>Hearing Time: 9:00 am |
| | Complaint Filed: November 26, 2025 |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 2

I.  Plaintiffs Have Failed To Plead An Effective Access Control Where Their Works Are Freely Accessible To The Public ........................................................................ 2

    A.  Congress explicitly distinguished between access controls and copy controls ..................................................................................................... 2

    B.  The FAC alleges at best copy controls, not access controls ................................. 5

II.  Each Of The Alleged TPMs Fail For Additional, Independent Reasons .......................... 10

    A.  TPM (1) – The rolling cipher cannot be effective or circumvented when the alleged lock and key are both provided together ................................................. 10

    B.  TPMs (2) and (4) – IP blocking and rate limiting and CAPTCHA, are back-end enforcement mechanisms which the Copyright Office has already determined fall outside the purview of § 1201 ........................................................ 11

    C.  TPM (3) – Session-bound, short-lived URLs are not effective when another URL can simply be generated in the regular course ........................................... 13

    D.  TPM (5) – Proof-of-origin tokens are pled in a vague and conclusory way that does not satisfy *Iqbal* or provide any basis for the Court to determine all three of the pleading requirements are met ........................................................... 14

CONCLUSION .................................................................................................................. 14

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,

556 U.S. 662 (2009) ................................................................................................ 10, 14

*Augustus v. County of Los Angeles*,

No. 23-55312, 2024 WL 743783 (9th Cir. Feb. 23, 2024) ............................................... 10

*Bell Atl. Corp. v. Twombly*,

550 U.S. 544 (2007) ..................................................................................................... 13

*Cordova v. Huneault*,

817 F. Supp. 3d 819 (N.D. Cal. 2026) ............................................................................. 9

*CouponCabin LLC v. Savings.com, Inc.*,

No. 2:14-CV-00039, 2016 WL 3181826 (N.D. Ind. June 8, 2016) .................................... 7

*Disney Enters., Inc. v. VidAngel, Inc.*,

869 F.3d 848 (9th Cir. 2017) .............................................................................. 1, 3, 4, 6

*Edland v. Basin Elec. Power Coop.*,

No. 4:21-CV-04008, 2021 WL 3080225 (D.S.D. July 21, 2021) ....................................... 8

*Hattler v. Ashton*,

No. 2:16-CV-04099, 2017 WL 11634742 (C.D. Cal. Apr. 20, 2017) ............................ 7, 8

*hiQ Labs, Inc. v. LinkedIn Corp.*,

31 F.4th 1180 (9th Cir. 2022) ........................................................................................ 7

*Hosseinzadeh v. Klein*,

276 F. Supp. 3d 34 (S.D.N.Y. 2017) ............................................................................... 5

*Lasica v. Am. Online, Inc.*,

No. 2:15-CV-04230, 2015 WL 12791495 (C.D. Cal. Sep. 3, 2015) .................................. 7

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,

387 F.3d 522 (6th Cir. 2004) ................................................................................... 6-8, 11

REPLY ISO MOT. TO DISMISS FAC; CASE NO. 5:25-CV-10287-EJD-SVK

**TABLE OF AUTHORITIES–Continued**

**Page(s)**

*MDY Indus., LLC v. Blizzard Ent., Inc.*,

    629 F.3d 928 (9th Cir. 2010)............................................................................ 2, 7, 11, 13

*Sony Music Ent. v. Uncharted Labs Inc.*,

    No. 1:24-CV-04777, 2026 WL 1019199 (S.D.N.Y. Apr. 15, 2026) ................................. 9

*TD Ameritrade, Inc. v. Matthews*,

    No. 3:16-CV-00136, 2018 WL 3451463 (D. Alaska July 16, 2018) ......................... 10, 13

*Ticketmaster L.L.C. v. Prestige Ent., Inc.*,

    306 F. Supp. 3d 1164 (C.D. Cal. 2018) ...................................................................... 12, 13

*Universal City Studios, Inc. v. Corley*,

    273 F.3d 429 (2d Cir. 2001)................................................................................................ 8

*Yout, LLC v. Recording Indus. Ass'n of Am., Inc.*,

    633 F. Supp. 3d 650 (D. Conn. 2022) .............................................................................. 8, 9

**Statutes**

17 U.S.C. § 107 ....................................................................................................................... 1

17 U.S.C. § 1201 ..................................................................................................................... 3

17 U.S.C. § 1201(a)(1)(A) ...................................................................................................... 1

17 U.S.C. § 1201(a)(3)(B) ...................................................................................................... 2

17 U.S.C. § 1201(c)(1)............................................................................................................ 4

**Regulation**

89 Fed. Reg. 85437 (Oct. 28, 2024)...................................................................................... 12

**Legislative Material**

S. Rep. No. 105–190 (1998) ................................................................................................... 3

**Other Authority**

U.S. Copyright Off., *The Digital Millennium Copyright Act of 1998:*

    *U.S. Copyright Office Summary* (Dec. 1998),

    https://www.copyright.gov/legislation/dmca.pdf................................................................ 4

iii

**TABLE OF AUTHORITIES–Continued**

**Page(s)**

U.S. Copyright Off., *Section 1201 Rulemaking: Ninth Triennial Proceeding to Determine Exemptions to the Prohibition of Circumvention* (Oct. 2024), https://www.copyright.gov/1201/2024/2024_Section_1201_Registers_ Recommendation.pdf ............................................................................... 11, 12

iv

**INTRODUCTION**

Plaintiffs' Opposition, ECF 46 ("Opp."), to NVIDIA's Motion to Dismiss, ECF 33 ("Mot."), proceeds from a false premise: that in NVIDIA's view, "[b]ecause the public can watch Plaintiffs' videos on YouTube, there is nothing left to protect." Opp. 1. But NVIDIA does not argue that by posting their videos on YouTube, Plaintiffs forfeited any rights in or protectability of those videos. To the contrary, Plaintiffs are free to assert those alleged rights through a copyright infringement claim, which would be subject to the fair use defense. *See* 17 U.S.C. § 107; Mot. 1, 6. Indeed, the DMCA was designed to avoid overlap with copyright infringement claims and erosion of the fair use defense.

To plead an anti-circumvention claim under the DMCA, Plaintiffs must therefore plausibly allege: (1) the existence of an access control—something controlling the ability to watch or view a copyrighted work; (2) its effectiveness in controlling access—meaning that one cannot watch or view the copyrighted work without encountering and satisfying that access control; and (3) circumvention of that access control by the defendant.

Plaintiffs cannot satisfy these requirements. *First*, as a matter of law, the first requirement of a § 1201(a)(1)(A) anti-circumvention claim does not apply where, as here, Plaintiffs do not dispute that they have made their works freely accessible to any member of the public with an internet connection. FAC ¶¶ 29, 33. Multiple courts have reached this same common-sense conclusion. *Infra* p. 7. Indeed, Plaintiffs concede that none of the alleged "technological protection measures" ("TPMs") control the ability to "watch a video"; instead, they limit only the ability to "walk away with the underlying file," *i.e., to make a copy*. Opp. 1; ECF 30 ("FAC") ¶¶ 3, 29, 33, 64. For this reason, accepting Plaintiffs' allegations as true, none of those alleged TPMs qualify as "access controls." *Second*, each of the alleged TPMs suffer additional deficiencies under requirements 2 (effectiveness) and/or 3 (circumvention), as detailed below.

Plaintiffs claim that the alleged TPMs are both "access controls" and "copy controls," citing the Ninth Circuit's decision in *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848 (9th Cir. 2017). But the defendant there conceded that the technology at issue—DVD encryption mechanisms—

1

effectively controlled the ability to both copy and access the videos. Here, in contrast, the FAC does not adequately allege access controls, effectiveness, or circumvention.

This Court should adopt NVIDIA's common-sense interpretation of the DMCA, which aligns with its statutory text, legislative history, and precedent. Plaintiffs' position, by contrast, would eviscerate the DMCA's careful distinction between access and copy controls—opening the door to a flood of copyright infringement claims disguised as DMCA claims. NVIDIA's Motion to Dismiss should be granted, and the Amended Complaint dismissed with prejudice.

## ARGUMENT

### I.    Plaintiffs Have Failed To Plead An Effective Access Control Where Their Works Are Freely Accessible To The Public.

#### A.    *Congress explicitly distinguished between access controls and copy controls.*

In their Opposition, Plaintiffs accuse NVIDIA of "manufactur[ing]" a "false dichotomy" between access controls and copy controls. Opp. 13-16 & n.4.[1] On Plaintiffs' telling, copy controls are also access controls, even where they do not control access to the works. Opp. 13. Plaintiffs are forced to take that contorted view because, as they concede, the TPMs at issue do not control the ability to "watch a video." Opp. 1.

Plaintiffs' position is impossible to square with the DMCA's text, which expressly distinguishes between access controls and copy controls. The statute defines an access control as "a technological measure" that "in the ordinary course of its operation, requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work." 17 U.S.C. § 1201(a)(3)(B). "Access" in the case of a video means the ability to watch or listen to the video, Mot. 4, such that circumventing access controls allows "someone to watch or listen to a work without authorization," *MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 945 (9th Cir. 2010).

---

[1] Contrary to Plaintiffs' framing, NVIDIA nowhere alleges that this distinction rides on the "purpose" of the alleged circumvention. Opp. 13. The question is not *why* the alleged circumvention occurred, but rather *what* the circumvented TPM controlled.

2

Ample contemporaneous legislative history confirms that conclusion. Section 1201(a) prohibits the circumvention of access controls and trafficking in technology designed to do the same; § 1201(b) prohibits only trafficking in technology designed to circumvent copy controls— but not the circumvention of such controls. 17 U.S.C. § 1201; *see* S. Rep. No. 105–190 at 12 (1998) ("1998 Senate Judiciary Report") (explaining that "there is no" corresponding "prohibition" in the DMCA on the circumvention of copy controls). As the Senate Judiciary Report issued concurrently with the DMCA's enactment explains, § 1201(a)'s restrictions on access controls and § 1201(b)'s restrictions on copy controls "are designed to protect two distinct rights" and "are not interchangeable," such that "many devices will be subject to challenge only under one of the subsections." 1998 Senate Judiciary Report at 12. In fact, Congress addressed—and rejected— Plaintiffs' exact position, explaining that if a TPM "does nothing to prevent access to the plain text of the work, but is designed to prevent that work from being copied, then a potential cause of action against the manufacturer of a device designed to circumvent the measure lies under subsection 1201(b), but not under subsection 1201(a)(2)." *Id.*

*VidAngel* proves the point. The defendant there argued that "a TPM cannot serve as both an access and use control," *i.e.*, copy control. 869 F.3d at 865. The Ninth Circuit rejected that contention, explaining that a TPM can simultaneously function as an access control and a copy control, but only if it "both (1) control[s] access and (2) protect[s] against copyright infringement." *Id.* at 864 (brackets and quotation marks omitted). That was the case in *VidAngel*, where the videos could not be viewed (accessed) or copied without decrypting the encryption TPMs. *See id.*

But the Ninth Circuit did not hold that every copy control is *also* an access control. On the contrary, the court stressed the distinction between the two, explaining that "§ 1201(b) governs TPMs that control use of copyrighted works, while § 1201(a) governs TPMs that control access to copyrighted works." *Id.* (citation omitted). The Ninth Circuit accordingly recognized that a defendant could violate § 1201(a) by "decrypting an encrypted work" to "watch [it] without authorization." *Id.* A defendant could also "break" the locks "in order to obtain a copy" of the protected work, in violation of the Copyright Act. *Id.* (quotation marks omitted). Or a defendant

could do both—"decrypt[] the TPMs" to gain access "and then also reproduce[] that work," as was the case in *VidAngel. Id.*

Plaintiffs urge this Court to find that copy controls can qualify as access controls *even when they do not control access to the works*. This would collapse the division Congress delineated between § 1201(a) and § 1201(b). Congress's desire to preserve the fair use defense was the driving force behind the DMCA's asymmetric framework. U.S. Copyright Off., *The Digital Millennium Copyright Act of 1998: U.S. Copyright Office Summary*, at 4 (Dec. 1998), https://www.copyright.gov/legislation/dmca.pdf ("1998 USCO DMCA Summary"); Mot. 6. Congress expressed the same point in the DMCA itself, stating that "[n]othing in this section shall affect rights, remedies, limitations, or defenses to copyright infringement, including fair use, under this title." 17 U.S.C. § 1201(c)(1).

Plaintiffs insist that their interpretation would not threaten NVIDIA's ability to "raise a fair use defense as it relates to its copying of Plaintiffs' work" because that "inquiry is separate from whether [NVIDIA] circumvented a technological measure in violation of Section 1201(a)." Opp. 22-23. But that is precisely the point: Allowing Plaintiffs to bring a DMCA claim based on NVIDIA's alleged copying of Plaintiffs' works was precisely what Congress sought to avoid. *See, e.g.*, 1998 USCO DMCA Summary, at 4 (explaining that § 1201's distinction between copy controls and access controls "was employed to assure that the public will have the continued ability to make fair use of copyrighted works").[2] Yet even Plaintiffs recognize that this is the result of their pleading strategy. Opp. 23 ("NVIDIA may raise a fair use defense as it relates to its copying of Plaintiffs' work (had they brought a copyright infringement claim) . . . .").

To understand the importance of this distinction, consider the videos posted by Plaintiff TEI and its owners, Ethan and Hila Klein. The Amended Complaint alleges that "[t]he Kleins helped

---

[2] For this reason, Plaintiffs' arguments about the § 1201(a)(1)(C) exemption process are misplaced. *See* Opp. 3, 5-6, 23. An exemption is necessary only for conduct that would otherwise amount to circumventing an access control, as Plaintiffs' own examples demonstrate. Opp. 5. Where, as here, § 1201(a)(1) does not apply, no exemption is necessary.

4

define what constitutes fair use reaction videos." FAC ¶ 17. The Kleins produce those reaction videos by copying segments of other people's YouTube videos and "interspers[ing]" their own comments and critiques. *See Hosseinzadeh v. Klein*, 276 F. Supp. 3d 34, 40 (S.D.N.Y. 2017). In response to copyright infringement claims, courts have deemed those videos fair use. *Id.* at 48. But if the DMCA prohibited copying YouTube videos, as Plaintiffs contend, the Kleins' fair use defense would have been irrelevant. Plaintiffs should not be permitted to use fair use as a shield for their own conduct, while denying NVIDIA the right to do the same.

### B. The FAC alleges at best copy controls, not access controls.

Plaintiffs have conceded that they have not tried to control access to their videos. Instead, Plaintiffs acknowledge that they intentionally posted their videos publicly for anyone with an internet connection to view, in order to "monetiz[e]" their works. FAC ¶¶ 16, 19, 21. Plaintiffs also agreed to YouTube's Terms of Service when uploading their videos, allowing any user "to access content." *See* FAC ¶ 29 (admitting YouTube users "can watch and listen to videos for free"); FAC ¶ 31 ("According to YouTube's Terms of Service, content creators such as Plaintiffs who upload content onto YouTube grant license to YouTube for certain uses as well as to other users of YouTube to access content through YouTube's services").

Plaintiffs try to frame alleged copying as "accessing" the "underlying file." But Plaintiffs' verbal gymnastics do not transform copy controls into access controls.

Plaintiffs' argument conflicts with their own allegations, which clearly accuse NVIDIA of copying. Opp. 1 (basing claim on NVIDIA's alleged "walk[ing] away with the underlying file"); FAC ¶ 4 (describing NVIDIA's offending conduct as "scraping and downloading . . . files"); FAC ¶ 29 (YouTube does not allow "downloading of the digital files underlying the content"); FAC ¶¶ 37, 40 (describing "prohibitions on downloading content"); FAC ¶ 38 (discussing limitations to the " 'download' option" and explaining that "the audiovisual files cannot be transferred to any other device, but remain only for streaming on the app"); FAC ¶ 64 ("YouTube allows users to 'stream' content—playing it as it is retrieved—but it prohibits, through contractual and TPMs, making permanent, unrestricted copies"); FAC ¶ 70 (stating that the alleged conduct "results in

REPLY ISO MOT. TO DISMISS FAC; CASE NO. 5:25-CV-10287-EJD-SVK

repeated copying"); FAC ¶ 86 (asserting that "every act of downloading . . . is a separate unauthorized copying event").

Plaintiffs rely heavily on *VidAngel*, arguing that the DVD-encryption TPMs in *VidAngel* did not "den[y] access to the disc's contents altogether, but merely" limited "the *manner* of access." Opp. 10-11. Plaintiffs say the same is true here because, although YouTube streams videos, it still limits access to "the underlying file." Opp. 10. To the extent Plaintiffs contend that streaming does not involve any files, that argument conflicts with their own Amended Complaint, which acknowledges that streaming videos also involves "digital files," FAC ¶ 32. Moreover, controlling access to *only* one particular copy of a work when the plain text of that work is otherwise freely accessible via other means is not an effective access control. Mot. 10-11; *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 547 (6th Cir. 2004) (holding that a TPM that blocks access in some respects but leaves "the literal code or text of the computer program or data freely readable" is not an effective access control).[3]

In any event, Plaintiffs' argument misstates *VidAngel*. *VidAngel* involved encryption that prevented users who bought or rented physical DVDs and Blu-ray discs from playing those discs on unauthorized devices. 869 F.3d at 852-53. VidAngel purchased the discs, decrypted them, copied the videos, modified the videos to allow users to remove "objectionable content," and uploaded the digital copies for streaming. *Id*. VidAngel in fact "concede[d]" that the encryption TPMs were "access controls," because they controlled the ability to watch the works themselves. *Id.* at 863-64. Moreover, none of the works at issue were freely accessible to the public; they were "available elsewhere only for purchase" via a movie ticket, digital download, or subscription on-demand streaming service. *Id.* at 853-54. And the controls were circumvented because "only authorized players" got the "keys" "to the discs' contents," such that VidAngel had to "break[]" that access control so that it could access the content on unauthorized devices, without a key. *Id.* at 864-65. Here, in contrast, Plaintiffs allege that the TPMs control, at best, the ability to download

---

[3] To the extent Plaintiffs claim the "underlying files" are something other than copies of their freely accessible videos, they do not identify what those are, or claim any separate copyrights in them.

6

or copy the videos at issue; not the ability to watch them via streaming. Opp. 1; FAC ¶¶ 3, 29, 33, 64.

Plaintiffs also misrepresent NVIDIA's position. NVIDIA does not contend that "a rightsholder relinquishes all § 1201(a) protection once it makes its work viewable, in any form." Opp. 2. Instead, NVIDIA's argument is that if a work is "freely accessible on the Internet," "the concept of 'without authorization' is inapt." *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1198 (9th Cir. 2022) (explaining in discussing the Computer Fraud and Abuse Act that accessing information freely available on the Internet is not akin to "breaking and entering"). Numerous cases have recognized this point in the DMCA context, specifically. In analyzing a § 1201(a)(2) claim for trafficking technology to circumvent access controls, the Ninth Circuit explained that a TPM that "blocks one form of access" but "leaves open the ability to access these elements" in another way "is not an effective access control measure." *MDY Indus.*, 629 F.3d at 953. Or to use Plaintiffs' locked door analogy, *see* Opp. 1-2, "[j]ust as one would not say that a lock on the back door of a house 'controls access' to a house whose front door does not contain a lock . . . it does not make sense to say that" § 1201(a)(1)(A)'s anti-circumvention restriction "applies to otherwise-readily-accessible copyrighted works," *Lexmark*, 387 F.3d at 547.

Thus, where a company takes steps to inhibit copying, but that "website remains accessible to users of servers and/or internet service providers," those TPMs are not effective access controls. *CouponCabin LLC v. Savings.com, Inc.*, No. 2:14-CV-00039, 2016 WL 3181826, at *6 (N.D. Ind. June 8, 2016) (defendant scraped content about coupon offers). So too where the works in question are "publicly available for streaming." *Hattler v. Ashton*, No. 2:16-CV-04099, 2017 WL 11634742, at *6-8 (C.D. Cal. Apr. 20, 2017) (excluding from the scope of § 1201(a)(1) "streaming media, which permits users to view or watch a copyrighted work but prevents them from downloading a permanent copy of the work"); *Lasica v. Am. Online, Inc.*, No. 2:15-CV-04230, 2015 WL 12791495, at *9 (C.D. Cal. Sep. 3, 2015) (explaining that "[a] person who engages in prohibited

usage of a copyrighted work to which he has lawful access does not fall afoul of *any* provision of Section 1201") (emphasis added).[4]

Plaintiffs largely ignore this authority—which they call "virtually nothing." Opp. 3. As for *Hattler* and *Lasica*, Plaintiffs dismiss those directly on-point decisions (at 11-12) because they predate the Ninth Circuit's decision in *VidAngel*. As discussed above, that case is miles away from this one, nor did it overrule *Hattler* or *Lasica*. Moreover, *Hattler* itself distinguished a case involving the DVD-encryption technology in *VidAngel* from a case involving publicly accessible streaming media. As *Hattler* explained, DVD encryption technologies " 'prevent the unauthorized *viewing* and copying of motion pictures,' " and therefore have no relevance where the works are "accessible for viewing to the general public." *Hattler*, 2017 WL 11634742, at *7 (quoting *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 436 (2d Cir. 2001)) (emphasis in *Hattler*). As such, although the DVD encryption mechanisms qualified as both access and copy controls, "streaming media [that] permits users to view or watch a copyrighted work but prevents them from downloading a permanent copy of the work" functions only as a copy control. *Id.* (quoting *Lexmark*, 387 F.3d at 545). The fact that *Hattler* came to that conclusion six months before *VidAngel* was decided does not make it any less true.

Plaintiffs' other cases do not require a contrary holding. *Edland v. Basin Electric Power Coop.*, a South Dakota decision, incorrectly concluded that the defendant circumvented access controls by using a phone to record—i.e., copy—a YouTube video without authorization. No. 4:21-CV-04008, 2021 WL 3080225, at *1, 6 (D.S.D. July 21, 2021). There, the complaint did not even purport to describe what access controls, if any, supposedly provided a technical limitation impairing a user from filming a video with their phone. Compl., *Edland v. Basin Electric Power Coop.*, 2021 WL 2258719 (D.S.D. Jan. 15, 2021).

In *Yout, LLC v. Recording Industry Ass'n of America, Inc.*, a company sought a declaratory judgment that its technology did not violate the DMCA because YouTube's rolling cipher is not an

---

[4] Plaintiffs fault NVIDIA for citing *Lasica* because it involved a § 1201(b) claim. Opp. 12. But the court's discussion of the statutory framework is persuasive authority in this § 1201(a) case.

REPLY ISO MOT. TO DISMISS FAC; CASE NO. 5:25-CV-10287-EJD-SVK

access control.  633 F. Supp. 3d 650, 659, 661 (D. Conn. 2022), *appeal pending*, No. 22-2760 (2d Cir.).  The District of Connecticut held the developer's "anemic allegations" failed to establish the negative required under the declaratory judgment posture, namely that "YouTube *lacks* a technological measure" that effectively controls access to videos, because YouTube "restrains its users' access to audio, video, and audio/video files by directing users to stream, not download, audio and video." *Id.* at 666-69 (emphasis added).  Indeed, the briefing in *Yout* did not address the statutory and legislative history and was so deficient that the Second Circuit allowed leave for an amicus to file an out-of-time brief in support of neither party to address those points.  Dkt. 124, *Yout*, No. 22-2760 (2d Cir. Oct. 10, 2025) (motion order); Dkt. 127, *Yout*, No. 22-2760 (2d Cir. Oct. 10, 2025) (amicus brief).

*Cordova v. Huneault* relied on *Edland* and *Yout*—along with a third case arising under § 1201(b), *see* Mot. 9 n.4—for the mistaken proposition that "[w]hether the videos may be viewed by the public is immaterial" because the complaint pled that YouTube's rolling cipher was a "technological measure[] intended to prevent unauthorized *downloading*."  817 F. Supp. 3d 819, 834 (N.D. Cal. 2026) (emphasis added).  The conflation of access controls and copy controls in *Cordova* is directly contrary to the statute.

Finally, in *Sony Music Entertainment v. Uncharted Labs Inc.*, 2026 WL 1019199 (S.D.N.Y. Apr. 15, 2026), the complaint contained less than one paragraph describing the functionality of the rolling cipher, which it too described as "preventing or inhibiting any downloading, copying, or distribution of the videos."  First Amended Complaint ¶ 53, *Sony*, No. 1:24-CV-04777, ECF 119 (S.D.N.Y. Oct. 6, 2025).  In a scant 1.5 page discussion, that Court concluded without explanation that these *copying* allegations "plausibly allege[d] technological measures that regulate *access* to its content." *Sony*, 2026 WL 1019199, at *3 (emphasis added).

In sum, Congress clearly distinguished between access controls and copy controls.  Here, Plaintiffs have failed to plead an effective access control, alleging at most that NVIDIA circumvented copy controls to download videos that were accessible by anyone with an Internet connection.

## II.    Each Of The Alleged TPMs Fail For Additional, Independent Reasons.

None of Plaintiffs' arguments with respect to the five specific TPMs overcome the basic failings of their case.  *See* Opp. 12-13, 18-22.

As a threshold matter, Plaintiffs' allegations about the five TPMs are defective because they fail to allege (1) when the alleged downloading occurred and (2) whether the TPMs (or even Plaintiffs' videos) were in place at that unspecified time.  That failure renders Plaintiffs' allegations that NVIDIA circumvented these specific TPMs when downloading Plaintiffs' specific videos wholly conclusory.  Mot. 14-15; *TD Ameritrade, Inc. v. Matthews*, No. 3:16-CV-00136, 2018 WL 3451463, at *6 (D. Alaska July 16, 2018) (dismissing complaint that failed to plead what TPMs were in place at time of alleged wrongdoing).

Plaintiffs also ask to be excused from their obligation to allege "enough facts to allow[] the court to draw the reasonable inference" that NVIDIA circumvented the alleged controls.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Instead, they ask this Court to rely on the "broader picture that the [Amended Complaint] paints."  Opp. 18.  But this "broader picture" fails to allege any facts from which the Court could reasonably infer that NVIDIA circumvented or even encountered any such TPMs at the time of the alleged downloading—and Plaintiffs do not contend otherwise.  Rather, Plaintiffs summarily conclude that because NVIDIA employed "large-scale" operations using "automated tools," it must have circumvented the TPMs for the specific videos at issue.  Opp. 18-21.  That kind of speculation is not enough to survive a motion to dismiss.  *Augustus v. County of Los Angeles*, No. 23-55312, 2024 WL 743783, at *1 (9th Cir. Feb. 23, 2024) (dismissing complaint that relied on allegations that were "either conclusory and lack supporting facts or rely on speculation").

In addition to failing to allege that *any* of these TPMs controlled NVIDIA's access to Plaintiffs' videos, the alleged TPMs also fail for the reasons below.

### A.    TPM (1) – The rolling cipher cannot be effective or circumvented when the alleged lock and key are both provided together.

Plaintiffs allege the rolling cipher has "proprietary" "signature . . . logic" that allows an Internet browser to locate the correct webpage for the video.  FAC ¶¶ 44-45.  But Plaintiffs concede

10

that the computer code allegedly constituting this logic is public: "the code is delivered as part of a file URL" and is "technically visible" to everyone. Opp. 19. Plaintiffs instead argue the rolling cipher does not need to be effective at "preventing" access, so long as it exercises "some degree of control," analogizing it to a lock and key. *Id.* (citing *MDY*, 629 F.3d at 954). But even if one goes along with Plaintiffs' analogy, a "lock" cannot be said to have been "picked," Opp. 2, when the lock and key were delivered together for anyone to use.

Plaintiffs rely (at 19) on *MDY*, but that case cuts against their position. *MDY* holds that purported "access" controls are not "effective" if they leave "open the ability to access . . . [the work] directly via the user's computer." *MDY*, 629 F.3d at 954 (citing *Lexmark*, 387 F.3d at 547). The same is true here. Not only has YouTube freely left open the ability to access and stream video content, it provides the so-called "key" with the alleged "lock." Mot. 11-12. For that same reason, Plaintiffs' reliance on *Yout* for the proposition that a TPM is still effective even if a person can find a way to "deactivate or go around" the TPM is misplaced. Opp. 19. There is no need to "go around" TPM (1) because the rolling cipher *itself* delivers the "key" to access the video.

### B.    TPMs (2) and (4) – IP blocking and rate limiting and CAPTCHA, are back-end enforcement mechanisms which the Copyright Office has already determined fall outside the purview of § 1201.

TPMs (2) and (4) fail because, as the Copyright Office has already determined, they do not qualify as access controls, would not be effective even if they were, and regardless, the IP address rotation which forms the basis of Plaintiffs' circumvention allegations does not qualify as circumvention within the meaning of § 1201.

TPM (2) is a rate limit enforcement system that throttles, denies, or blocks requests once they meet defined thresholds. FAC ¶ 47. TPM (4) functions similarly; it is triggered to deliver a CAPTCHA challenge if suspicious traffic patterns are detected. FAC ¶ 53.

Neither of those are effective access controls. The Copyright Office has already concluded as much as part of the very rulemaking exemption process Plaintiffs argue NVIDIA should have invoked. U.S. Copyright Off., *Section 1201 Rulemaking: Ninth Triennial Proceeding to Determine Exemptions to the Prohibition of Circumvention* (Oct. 2024),

11

https://www.copyright.gov/1201/2024/2024_Section_1201_Registers_Recommendation.pdf; *see* Opp. 5-6 (citing 89 Fed. Reg. 85437, 85439 (Oct. 28, 2024)); 89 Fed. Reg. at 85437 (adopting Copyright Office's recommendations within final rule); *see also supra* p.4 n.2.  As the Copyright Office explained, these sorts of "rate limit enforcement systems do not effectively control access to a work as contemplated by section 1201.  They do not require 'the application of information, or a process or a treatment'—but instead require that users refrain from conduct, i.e., applying information."  Section 1201 Rulemaking Report at 125 (emphasis added and footnote omitted). Plaintiffs' arguments as to TPMs (2) and (4) fail for this reason alone.

But the Copyright Office went further.  It also explicitly rejected Plaintiffs' circumvention theory, which here, rests on "[t]he use of virtual machines to intentionally rotate IP addresses." FAC ¶¶ 99, 105; *see* Opp. 10.  As the Copyright Office explained, "IP address rotation . . . does not appear to involve the circumvention of an effective control."  Section 1201 Rulemaking Report at 125.  "Since these measures did not prevent the defendants from accessing the plaintiff's web service via other servers and internet service providers, the technological measure did not effectively control access to a work." *Id.*  Plaintiffs' claims as to both TPMs fail independently for this second reason as well.

As for TPM (4), Plaintiffs rely on *Ticketmaster L.L.C. v. Prestige Ent., Inc.*, 306 F. Supp. 3d 1164 (C.D. Cal. 2018), for the proposition that CAPTCHA challenges *can* function as access controls.  Opp. 22.  But the difference between the CAPTCHA technology here, and that at issue in *Ticketmaster*, defies this analogy.  The CAPTCHA in *Ticketmaster* applied "[w]hen a user submits a ticket request," meaning CAPTCHA had to be completed before the page behind it could be accessed.  Compl. ¶ 21, *Ticketmaster*, No. 2:17-cv-7232 (C.D. Cal. Oct. 2, 2017); *see Ticketmaster*, 306 F. Supp. 3d at 1174 ("In order to access those copyrighted pages, Defendants must bypass security measures, including CAPTCHA . . . .").  Here, by contrast, Plaintiffs do not allege that the CAPTCHA is a threshold access requirement at all, but rather that it is triggered only after the detection of certain unspecified traffic patterns—much the same as the rate limiting mechanism in TPM (2).  FAC ¶ 53.  In this way, a user need not "encounter" either TPM (2) or (4)

in order to gain access to any work. *MDY*, 629 F.3d at 952 (TPM does not control access where "a player need not encounter [the TPM]" to obtain access).

Finally, even if this Court disregards the Copyright Office's own determinations that the technology described as TPMs (2) and (4) do not qualify as access controls *and* that the IP address rotation alleged by Plaintiffs does not qualify as circumvention, Plaintiffs' allegations as to these TPMs fail as conclusory, and lacking the requisite specificity. Plaintiffs argue that, because NVIDIA allegedly employed "large-scale scraping operations," one can "reasonably infer" that these operations "necessarily . . . trigger . . . human-verification [CAPTCHA] challenges." Opp. 21-22. But Plaintiffs allege no other facts that support this conclusory inference. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, Plaintiffs' own cited case exemplifies the kind of specificity required—and lacking—here. *See* Opp. 22 (citing *Ticketmaster*, 306 F. Supp. 3d at 1170-71, where plaintiffs alleged the software bypassed CAPTCHA protections that applied in response to every ticket request, for 313,528 orders "from January 2015 to September 2016"). And even if the Court were to take Plaintiffs' allegations as true, they at best have alleged that CAPTCHA *may* have been triggered; there is no plausible allegation that NVIDIA did in fact trigger CAPTCHA, or that any of Plaintiffs' works were downloaded following such trigger. Mot. 14. The same applies to TPM (2), which likewise would be triggered only after certain unalleged conditions, according to the Amended Complaint's own allegations. FAC ¶¶ 47, 49.

### C.    *TPM (3) – Session-bound, short-lived URLs are not effective when another URL can simply be generated in the regular course.*

TPM (3) allegedly generates file URLs that expire after a set time or outside a specific session. FAC ¶¶ 51-52; Opp. 20-21. But whether a URL is temporary or linked to a specific session does not change the fact that it remains an open door providing access to the videos. Moreover, Plaintiffs do not provide any concrete allegations about how NVIDIA supposedly circumvented this control, claiming only that NVIDIA used unspecified "automated tools." Opp. 21. That allegation provides no notice of the nature of the accused conduct. *TD Ameritrade, Inc.,* 2018 WL 3451463, at *6; *see* Mot. 14-15.

13

**D.**        ***TPM (5) – Proof-of-origin tokens are pled in a vague and conclusory way that does not satisfy* Iqbal *or provide any basis for the Court to determine all three of the pleading requirements are met.***

Plaintiffs allege YouTube uses tokens generated "during playback" to verify that "requests originate from [an] authorized client environment operating within the intended playback context." Opp. 22. Without specifying what the "tokens" are, when they are generated or how, or via what tools NVIDIA allegedly circumvented that TPM, Plaintiffs summarily conclude that NVIDIA must have used "[a]utomated tools" which "operate outside YouTube's authorized player environment" to bypass this TPM. *Id.* (quoting FAC ¶ 56) (alteration in original). Such allegations are abstract and conclusory, and none of the Plaintiffs' authority excuses their failure to plausibly allege conduct by a defendant that supposedly gives rise to a DMCA claim. NVIDIA is not demanding a higher pleading standard, as Plaintiffs purport, *id.*, but rather that Plaintiffs plead enough facts for NVIDIA to understand what is accused and for the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678. Plaintiffs have failed to do so.

## CONCLUSION

For the foregoing reasons and those in NVIDIA's Motion, Plaintiffs' Amended Complaint should be dismissed with prejudice.

14

Dated: May 26, 2026

Respectfully submitted,

By: */s/ Lauren B. Cury*

**HOGAN LOVELLS US LLP**
Vassi Iliadis (Bar No. 163450)
Joe O'Connor (Bar No. 274421)
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 785-4600
Facsimile: (310) 785-4601
vassi.iliadis@hoganlovells.com
joe.oconnor@hoganlovells.com

Lauren B. Cury (*pro hac vice*)
Anna Kurian Shaw (*pro hac vice*)
Danielle Desaulniers Stempel (*pro hac vice*)
Casey Magersupp (*pro hac vice*)
555 13th Street NW
Washington, DC 20004
Telephone: (202) 637-5600
lauren.cury@hoganlovells.com
anna.shaw@hoganlovells.com
danielle.stempel@hoganlovells.com
casey.magersupp@hoganlovells.com

Katherine B. Wellington (*pro hac vice*)
125 High Street, Suite 2010
Boston, MA 02110
Telephone: (617) 702-7747
katherine.wellington@hoganlovells.com

Gurtej Singh (Bar No. 286547)
Christine Pinnkathok (Bar No. 353430)
4 Embarcadero Center, Suite 3500
San Francisco, CA 94111
Telephone: (415) 374-2300
tej.singh@hoganlovells.com
christine.pinnkathok@hoganlovells.com

*Attorneys for Defendant*
*NVIDIA CORPORATION*

15